```
              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
                        HARRISON DIVISION

TRISHA E. HOWARD                                          PLAINTIFF

          v.               Civil No. 05-3029

BAXTER HEALTHCARE CORP. AND
HARTFORD LIFE GROUP INSURANCE CO.                        DEFENDANTS
```

**ORDER**

NOW on this the 25th day of June 2007, comes on for consideration plaintiff's **Motion for Summary Judgment** (document #20) and defendants' response thereto (document #23). The Court, having reviewed the Administrative Record, the briefs of the parties, and all other matters of relevance before it, and being well and sufficiently advised, finds and orders as follows:

1. Plaintiff Trisha E. Howard ("Howard") was a participant in a disability plan (the "Plan") provided by her former employer, defendant Baxter Healthcare Corporation ("Baxter"). Hartford Life Group Insurance Company ("Hartford") issued the Plan to Baxter, effective July 1, 2002. The Plan provided both short-term and long-term disability benefits to eligible Baxter employees. Howard was found eligible for benefits under the Plan, but such benefits were later terminated by Hartford. Howard now appeals Hartford's decision to terminate her benefits under the Plan.

2. The parties have treated the matter now under consideration as one for summary judgment, but the procedural

posture of this case is that of an administrative appeal. The usual presumptions applicable to motions for summary judgment do not apply. The facts are those contained in the Administrative Record and the standard for review is dictated by the terms of the Plan.

    3. The Plan is governed by the provisions of the Employee Retirement Income Security Act ("ERISA"). Denial of ERISA benefits is "reviewed on a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the administrator has discretionary authority, its eligibility decisions are reviewed for abuse of discretion. Groves v. Metropolitan Life Insurance Co., 438 F.3d 872 (8th Cir. 2006). That standard has been described as follows:

> In applying an abuse of discretion standard, we must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision. A reasonable decision is fact based and supported by substantial evidence. We may consider both the quantity and quality of evidence before a plan administrator. And we should be hesitant to interfere with the administration of an ERISA plan.

Groves, 438 F.3d 872, 875 (internal citations and quotation marks omitted).

    Although abuse of discretion review puts a heavy burden on a participant whose benefits have been terminated, it does not amount

to "rubber-stamping the result." A termination decision must be reasonable, i.e., "supported by substantial evidence that is assessed by its quantity and quality." Torres v. UNUM Life Insurance Co. of America, 405 F.3d 670, 680 (8th Cir. 2005). "Substantial evidence" is "more than a scintilla but less than a preponderance." Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003).

    4. In the instant case, it is undisputed that the Plan gives Hartford discretion to determine eligibility for and entitlement to benefits. See Firestone Tire & Rubber Co., 489 U.S. at 115 (1989) (stating that to qualify for deferential review, the plan administrator and fiduciaries under ERISA need only reserve discretionary authority to themselves in the Plan document); see also Clapp v. Citibank, N.A. Disability Plan (501), 262 F.3d 820, 827 (8th Cir. 2001) (holding that the "as determined by" provision in an insurance plan was explicit "discretion-granting language"). Specifically, the Plan provides that Hartford has "discretionary authority to determine your eligibility for and entitlement to benefits under the Policy." Such provisions have been held sufficient to give the claims administrator discretionary authority to determine eligibility. Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801 (8th Cir. 2002). The Court will, therefore, review Hartford's benefits-related decisions for abuse of discretion.

5.  With the foregoing principles in mind, the Court has examined the Administrative record, from which it has derived the following relevant facts:

* The Policy provides, in pertinent part, that a participant is disabled when Hartford determines that a claimant is "(1) continuously unable to perform the Material and Substantial Duties of [his/her] regular occupation; and (2) not working for wages in any occupation for which [he/she] is or became qualified by education, training, or experience."

* The Policy defines the phrase "Material and Substantial Duties" as "the necessary functions of Your Regular Occupation which cannot be reasonably omitted or altered."

* The Policy further states that a claimant "may be asked to submit proof that you continue to be disabled and are continuing to receive Appropriate and Regular Care of a Doctor." Failure to provide such proof of continuing disability may result in a termination of benefits.

* In March 2004, Howard, an assembler at Baxter's Mountain Home, Arkansas facility, submitted a short-term disability claim under the Plan to Hartford. The diagnosis supporting her claim was left shoulder vascular necrosis. She underwent a left shoulder hemiarthroplasty

   on March 18, 2004.  After an elimination period, Howard was approved for short-term disability benefits beginning April 8, 2004 – having left work on March 17, 2004.

\*  Short-term disability benefits were periodically extended by Hartford, as Howard remained off work for post-operative recovery.

\*  In a progress note dated May 30, 2004, Dr. William Goodman, Howard's treating physician, noted that Howard was "doing fantastic."  Dr. Goodman also noted that x-ray reports taken that day showed "satisfactory alignment of all [shoulder] components."  Despite these comments, Dr. Goodman instructed Howard not to use her left arm if she returned to work.  Baxter could not accommodate this restriction, and Howard remained off work.  Based on this information, Hartford extended benefits through June 16, 2004.

\*  On June 4, 2004, Dr. Goodman provided a status report indicating that Howard should remain off work through August 5, 2004.  Dr. Goodman's records showed that Howard still had decreased range of motion in her left shoulder.  Accordingly, Hartford extended disability benefits to Howard through August 5, 2004.  By letter dated June 18, 2004, Hartford informed Howard of this extension and the need to provide medical documentation if she was unable

    to return to work by August 9, 2004.

* Howard returned to Dr. Goodman for a follow-up visit on August 13, 2004.  Dr. Goodman recorded that Howard still had limited motion, but her pain was resolved.  Further, Dr. Goodman described x-rays of the left shoulder as "look[ing] great," with satisfactory alignment of the component.
* During her August 13, 2004 follow-up visit with Dr. Goodman, Howard reported that she was now bothered by her right shoulder.  Upon examination, Dr. Goodman determined that the right shoulder reflected a very positive impingement sign.  His diagnosis of the right shoulder problem was "right shoulder rotator cuff tendonitis impingement syndrome."  Dr. Goodman recommended arthroscopy of the right shoulder, open subacromial decompression, and possible repair of the rotator cuff.  Surgery was tentatively scheduled for September 9, 2004.
* Upon reviewing the Functional Assessment Tool provided by Dr. Goodman after the August 13th follow-up visit with Howard, Hartford determined that Howard's limited range of motion in her left shoulder would continue to preclude the performance of job duties in her occupation.  With regard to the right shoulder surgery, Hartford anticipated functional impairment for at least 90 days

      post-operation.

* On September 1, 2004, Hartford notified Howard that her short-term benefit period had been extended pending further evaluation with her physician.
* On September 9, 2004, Howard underwent surgery on her right shoulder.
* On September 27, 2004 Hartford informed Howard that long-term disability benefits had been approved through November 30, 2004.  The period from March 18 through September 29, 2004 had been used to satisfy the Policy's 28-week elimination period.  Accordingly, long-term disability benefits were commenced on September 30, 2004.
* In notes taken during a telephone conversation between Hartford representative Kamilah Lowery and Howard on November 29, 2004, Lowery reported that Howard said she had finished physical therapy for her right shoulder and had only home exercises to do.  Howard also stated that her last office visit with Dr. Goodman had been on November 19, 2004, and they did not discuss a return-to-work date.  No further visits were scheduled with Dr. Goodman; but, Howard was to return as needed.  Howard further stated that she could not return to work because she had been terminated from her job.  She also reported that she could use her right shoulder better than her

    left, and she could not reach overhead or pick up heavy objects. Howard also stated that, due to their repetitive nature, she did not feel she could perform her job duties.

* On December 17, 2004, Hartford received back a pre-printed Functional Assessment Tool form that was completed by Dr. Goodman. In response to the inquiry "[d]o you feel your patient is currently capable of performing full time work which requires 4 hours standing, 2 hours walking, 4 hours sitting, with occasional reaching above shoulders and frequent reaching below shoulders?," Dr. Goodman answered "yes." The limitations indicated were described by Dr. Goodman as "permanent."

* In a letter dated December 21, 2004, Hartford informed Howard that Dr. Goodman had indicated that she could return to work and her benefits would cease on December 31, 2004. The letter informed Howard that she could appeal the decision or provide additional medical information within 180 days from the date of the letter.

* By letter dated February 2, 2005, Howard sought reconsideration of Hartford's decision to terminate benefits. In this letter, Howard explained that even after her surgeries she did not have full rotation of her

        left shoulder and arm, and had only limited rotation and use of her right shoulder and arm. Howard also stated that she had debilitating arthritis in her hands. Given these conditions, Howard stated, she knew that she could not give the 100 percent effort needed for her job.

* During a February 18, 2005 telephone communication with Hartford representative Lowery, Howard stated that she had an additional office visit with Dr. Goodman sometime after November 19, 2004 – she could not recall the exact date of the visit. Howard also stated that she was not seeing any other physician and was not taking any pain medication. She also described having full range of motion in her right shoulder, but some pain in her left shoulder. Howard indicated that her work on the Baxter assembly line did not require overhead reaching, but did involve frequent reaching at eye level.

* By letter dated March 21, 2005, Hartford informed Howard that her February letter had been treated as a request for appeal, and her file had been forwarded to Hartford's Appeals Unit for review.

* The decision to terminate benefits was subsequently upheld by the Appeals Unit. The outcome of the appeal and basis for the decision were communicated to Howard by Appeal Team Leader Cheryl Sauerhoff in a letter dated

    March 23, 2005. This letter noted that Dr. Goodman had approved Howard's return to full-time work with occasional reaching above the shoulders and frequent reaching below the shoulders. While the letter acknowledged that Howard could not do frequent overhead or heavy lifting, her job description did not call for these particular abilities.

\*  In a letter dated April 1, 2005, counsel for Howard sought reconsideration of the Appeals Unit's final decision. Sauerhoff responded by letter dated April 11, 2005, advising Howard's attorney that his letter had been received, but that the administrative record had been closed as of the final decision of the Appeals Unit.

  6. When the foregoing history of Howard's claim for disability benefits is viewed as a whole, the Court finds substantial evidence supporting Hartford's conclusion that Howard's benefits should have been terminated as of December 31, 2004. Certainly it cannot be said that no reasonable person could have reached the decision reached by Hartford in this case.

  Pursuant to the Plan, it is a basis for termination of benefits that a participant is no longer disabled under the terms of the Plan, i.e., that she is no longer "unable to perform the Material and Substantial Duties" of her regular occupation due to her injury. There is substantial evidence that Howard had reached this point by

December 31, 2004. Howard had a satisfactory outcome from her surgeries, and she was in good enough shape that Dr. Goodman released her to return to work as of December 17, 2004. Dr. Goodman noted that while Howard had certain permanent limitations, these limitations would not hinder her from performing full-time work which requires "4 hours standing, 2 hours walking, 4 hours sitting, with occasional reaching above shoulders and frequent reaching below shoulders." Baxter's prior decision to terminate Howard's employment does not merit a finding of disability for purposes of the Plan, although it may well be a legitimate subject of litigation for other reasons.

For the foregoing reasons, the Court finds that the decision of Hartford to terminate Howard's long-term disability benefits as of December 31, 2004 was supported by substantial evidence and should be affirmed.

**IT IS THEREFORE ORDERED** that the decision of Hartford Life Insurance Group Company to terminate the long-term disability benefits of Trisha E. Howard is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Jimm Larry Hendren
**JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE**